UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| TINA L. HART | : |
| | : |
| v. | :   C.A. No. 05-276A |
| | : |
| JO ANNE B. BARNHART, | : |
| Commissioner, Social Security | : |
| Administration | : |

### MEMORANDUM AND ORDER

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits ("DIB") under the Social Security Act ("Act"), 42 U.S.C. § 405(g). Plaintiff filed her Complaint on June 21, 2005 seeking to reverse the decision of the Commissioner. On February 17, 2006, Plaintiff filed a Brief in Support of Motion for Judgment Reversing the Commissioner's Decision, or Alternatively, Remanding the Case for Further Proceedings. The Commissioner filed a Motion to Affirm her decision on March 21, 2006.

With the consent of the parties, this case has been referred to me for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Based upon my review of the entire record, independent legal research, and the legal memoranda filed by the parties, I find that there is substantial evidence in the record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act. Thus, I order that the Commissioner's Motion to Affirm (Document No. 8) be GRANTED and that Plaintiff's Motion for Judgment (Document No. 7) be DENIED.

## I.     PROCEDURAL HISTORY

Plaintiff filed an application for DIB benefits on October 15, 2002 alleging she became disabled on June 21, 2002. (Tr. 53-55). The application was denied initially (Tr. 27-28, 30-32, 183-191, 197-210, 211-216) and on reconsideration. (Tr. 29, 34-36, 217-225). On November 9, 2004, a hearing which was held before Administrative Law Judge Gerald Resnick (the "ALJ"), at which Plaintiff, represented by counsel, and a vocational expert, testified. (Tr. 241-274). The ALJ issued a decision on February 9, 2005, finding that Plaintiff was not disabled within the meaning of the Act. (Tr. 10-26). The Appeals Council denied Plaintiff's request for review on May 9, 2005. (Tr. 4-6, 8-9). A timely appeal was then filed with this Court.

## II.    THE PARTIES' POSITIONS

Plaintiff argues that the ALJ's decision was not based on substantial evidence because he did not give sufficient weight to the opinion of the treating physician, David F. Cunningham, M.D. The Commissioner disputes Plaintiff's claim of error and argues that there is substantial evidence in the record as a whole to support her decision that Plaintiff is not entitled to disability benefits.

## III.   THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (*per curiam*); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

-2-

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

-3-

Where the court cannot discern the basis for the Commissioner's decision, a sentence four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-10 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-92 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Jackson, 99 F.3d at 1095. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Id. The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. Id.

## IV.    DISABILITY DETERMINATION

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.    Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-76 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh

the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's RFC (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

## B.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.    Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists

if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

## C.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

## D.    The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do

not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her RFC, age, education and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

### E. Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the

-8-

national economy. <u>Seavey</u>, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. <u>Allen v. Sullivan</u>, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). <u>Seavey</u>, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. <u>Id.</u>; <u>see also</u> <u>Heckler v. Campbell</u>, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. <u>Nguyen</u>, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. <u>Heggarty</u>, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. <u>See</u> <u>Ferguson v. Schweiker</u>, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

## 1.    Pain

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36.

Congress has determined that a claimant will not be considered disabled unless he furnishes medical

and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical

impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C.

§ 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including

pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with

the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs

and laboratory findings show medical impairments which reasonably could be expected to produce

the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the

following factors:

> (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4) Treatment, other than medication, for relief of pain;
>
> (5) Functional restrictions; and
>
> (6) The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). An individual's

statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

## 2.    Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V.    APPLICATION AND ANALYSIS

### A.    Background

Plaintiff was forty-two years old on the date of the ALJ's decision. (Tr. 53). She has an eighth grade education, (Tr. 65, 247), and her past work experience includes employment as a lunch/teacher's aide, retail sales associate, cashier and telephone answerer. (Tr. 60). Plaintiff last worked in 2002. (Tr. 74). She lives with and is supported by her husband. (Tr. 247-48). They have been married for over twenty-five years. (Tr. 192). The couple has no children. (Tr. 248).

Plaintiff alleged disability due to osteoporosis, loss of vision in her right eye and bronchitis. (Tr. 59). A magnetic resonance imaging (MRI) was performed on April 27, 2000 which revealed a mass arising from the sella turcica. (Tr. 103-105). On May 28, 2000, Dr. Glenn Hebel saw Plaintiff, who complained of headaches, neck pain and rhinorrhea following removal of most of a pituitary tumor. (Tr. 118-124). Upon exam, Plaintiff was alert and oriented, and she had intact extraocular movements; clear lungs; no sensory, motor, or neurological deficits; and normal extremities with no edema. (Tr. 118). Plaintiff was diagnosed with chronic headaches and neck pain, and she was discharged in good condition. (Tr. 119, 123).

An MRI study of Plaintiff's brain on August 15, 2000 revealed a considerable resection of a pituitary tumor (Tr. 125-126), a March 28, 2001 bone density scan of Plaintiff's hip and spine revealed findings consistent with osteoporosis (Tr. 127), and an April 19, 2001 MRI study of Plaintiff's brain revealed a residual right pituitary tumor. (Tr. 140).

On May 15, 2001, Dr. Curt Doberstein saw Plaintiff, who, upon exam, was alert, oriented and in no acute distress with no perceptible vision in her right eye; intact cranial nerves; good tone; normal muscle bulk and sensation; and normal spinal range of motion with no spasms or tenderness. (Tr. 141). Dr. Doberstein reported that Plaintiff's residual tumor was not causing any significant compression, and he opined that she did not require surgical removal of that tumor. (Tr. 141).

On November 13, 2001, Plaintiff was admitted to the Newport Hospital for complaints of bone and joint pain. (Tr. 143-150). Upon exam, Plaintiff was alert and in mild distress, and she had normal lungs, extremities, and neurological and psychiatric exams. (Tr. 144). Plaintiff was

diagnosed with lower extremity pain and discharged in good condition with improved symptoms. (Tr. 145).

On January 7, 2002, Dr. Alessandro Papa saw Plaintiff, who was reported to be fairly healthy aside from her pituitary tumor. (Tr. 160-161). Upon exam, Plaintiff was alert, oriented and in no acute distress, and she had normal extremities. (Tr. 160). Plaintiff was diagnosed with leukocytosis and mild erythrocytosis caused by smoking. (Tr. 160).

On January 9, 2002, Dr. David Cunningham saw Plaintiff, who, upon exam, had a wheeze in her lungs and edema in her ankles. (Tr. 162). Plaintiff was diagnosed with status-post pituitary surgery; a history of leukocytosis; a history of an abnormal chest x-ray; and a history of edema. (Tr. 162). Dr. Cunningham again examined Plaintiff on February 6, 2002, at which time, she had clear lungs; a normal neurological exam; and edema in her calves. (Tr. 162). Plaintiff was diagnosed with a history of edema and borderline blood pressure; a history of elevated cholesterol; and benign positional vertigo. (Tr. 162). On March 7, 2002, when Dr. Cunningham examined her again, Plaintiff had clear lungs and edema in her calves. (Tr. 163). Plaintiff was diagnosed with lower extremity edema. (Tr. 163).

During a March 27, 2002 visit, Plaintiff reported to Dr. Cunningham that medications helped her edema. (Tr. 163). Upon exam, she had clear lungs and decreased edema in her lower extremities. (Tr. 163). Plaintiff was diagnosed with a history of a pituitary tumor, lower extremity edema, and a history of an abnormal PAP smear. (Tr. 163).

On June 20, 2002, again Dr. Cunningham saw Plaintiff, who was doing okay. (Tr. 164). Upon exam, Plaintiff had wheezes in her lungs and trace edema in her ankles. (Tr. 164). Plaintiff

-13-

was diagnosed with a history of a pituitary tumor, a probable benign nodule in her lung, probable early chronic obstructive pulmonary disease, tobacco abuse, and a history of elevated cholesterol. (Tr. 164).

On August 1, 2002 an MRI study of Plaintiff's brain revealed a stable residual tumor within the right sella and suprasella regions. (Tr. 154-155, 168). On September 12, 2002, Dr. Cunningham again examined Plaintiff who had wheezes and decreased breath sounds. (Tr. 165). Plaintiff was diagnosed with acute bronchitis, tobacco abuse, a history of a pituitary tumor and impacted cerumen. (Tr. 165).

On September 20, 2002, Dr. Cunningham saw Plaintiff, who reported that she felt much better. (Tr. 166). Upon exam, Plaintiff had clear lungs and no edema in her extremities. (Tr. 166). Plaintiff was diagnosed with a history of acute bronchitis, a history of a pituitary tumor, and a history of progressive weight gain. (Tr. 166).

On October 18, 2002, Dr. Cunningham saw Plaintiff, who reported that she was doing better. (Tr. 166). Upon exam, Plaintiff had clear lungs and trace edema in her ankles. (Tr. 166). Plaintiff was diagnosed with a history of acute bronchitis, a history of tobacco abuse, and a history of progressive weight gain. (Tr. 166).

On November 5, 2002, Dr. Michael D. Hein saw Plaintiff, who reported that she felt well overall. (Tr. 179-182). Upon exam, Plaintiff had a clear chest and no edema in her extremities. (Tr. 180). Dr. Hein opined that Plaintiff was not disabled. (Tr. 179).

On January 10, 2003, Dr. Cunningham saw Plaintiff, who reported that she was doing okay. (Tr. 171). Upon exam, Plaintiff's lungs showed signs of occasional rhonchi and there was a trace

-14-

edema in her ankles. (Tr. 171). Plaintiff was diagnosed with panhypopituitarism, a history of a pituitary tumor and a history of lower extremity edema. (Tr. 171).

On January 16, 2003, Dr. John Bernardo, a non-examining Disability Determination Services (DDS) physician, opined that Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk for at least two hours in an eight-hour workday, sit for at least six hours in an eight-hour workday, push/pull on a limited basis with her lower extremities, occasionally crawl and climb ramps and stairs, frequently balance, stoop, kneel, and crouch; and that she should avoid concentrated exposure to extreme cold and heat, wetness, humidity, pulmonary irritants, and hazards. (Tr. 183-190).

On July 1, 2003, Dr. Karen J. Gieseke performed a mental status of examination of Plaintiff. (Tr. 192-196). Upon exam, Plaintiff was oriented and anxious, and she had a depressed and tearful affect; no homicidal ideas or hallucinations; vague suicidal ideas; normal judgment, reasoning, and memory; average intelligence; the ability to concentrate adequately and to handle her finances; and no difficulty understanding and answering questions. (Tr. 194-196). Dr. Gieseke diagnosed Plaintiff with Major Depressive Disorder without psychotic features, and she opined that Plaintiff could interact successfully with co-workers and supervisors. (Tr. 195-196).

On July 15, 2003, Dr. Cunningham saw Plaintiff, who reported that she was doing okay. (Tr. 172). Upon exam, Plaintiff was in no acute distress, and she had clear lungs and no edema in her ankles. (Tr. 172). Plaintiff was diagnosed with a history of pituitary tumor with panhypopituitarism; depression; and a history of hyperlipidemia. (Tr. 172).

-15-

On August 14, 2003, Dr. Clifford Gordon, a non-examining DDS psychologist, completed a Psychiatric Review Technique Form (PRTF), in which he opined that Plaintiff had an affective disorder, which resulted in mild limitations in activities of daily living; no difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, and pace; and no episodes of decompensation. (Tr. 197, 200, 207). Dr. Gordon also completed a Mental Residual Functional Capacity Assessment (MRFCA), in which he opined that Plaintiff had moderate limitations in two categories but was otherwise not significantly limited in eighteen categories. (Tr. 211, 215-216).

On September 3, 2003, Dr. Vasant Gideon, a non-examining DDS physician, opined that Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for three to four hours in an eight-hour workday; sit for at least six hours in an eight-hour workday; push/pull without limitation; occasionally climb and crawl; frequently balance, stoop, kneel, and crouch; see near, far, and depth perceptions on a limited basis; and that she should avoid concentrated exposure to extreme cold and heat and hazards. (Tr. 217-224).

On October 4, 2003, Dr. Cunningham saw Plaintiff, who reported that she was feeling better. (Tr. 173). Upon exam, Plaintiff had some scattered rhonchi in her lungs and trace edema in her lower extremities. (Tr. 173). Plaintiff was diagnosed with depression, hyperlipidemia, status-post pituitary removal, and rectal bleeding. (Tr. 173).

On November 17, 2003, Dr. Joseph Pianka saw Plaintiff (Tr. 226-227, 228-230), who, upon exam, was alert, oriented, and in no apparent distress with decreased right eye vision; a few wheezes in her lungs; no edema in her extremities; and intact cranial nerves. (Tr. 227, 229).

On December 1, 2003, Dr. Cunningham saw Plaintiff, who reported that she was doing fine. (Tr. 174). Upon exam, Plaintiff was in no acute distress and she had wheezes in her lungs. (Tr. 174). Plaintiff was diagnosed with a history of panhypopituitarism, a history of an abnormal mammogram, and a history of elevated cholesterol. (Tr. 174).

On August 25, 2004, Dr. Pianka saw Plaintiff, who, upon exam, was alert, oriented, and in no apparent distress with clear lungs and no edema in her extremities. (Tr. 236).

On November 13, 2004, Dr. Cunningham reported that Plaintiff's impairments would cause her to be absent from work more than four times per month; have difficulty leaving the house four or more days per week; need to elevate her legs six hours a day; be unable to lift or carry more than five pounds; have difficulty using her hands for repetitive movements; be unable to walk more than a total of one hour a day and ten minutes at one time; be unable to sit more than a total of four hours a day and one hour at one time; and have constant interference with attention and concentration. (Tr. 238-239).

On March 19, 2005, Dr. Cunningham reported that Plaintiff was totally disabled. (Tr. 240). This one-page report was obtained approximately one month after the ALJ issued his decision and was submitted to the Appeals Council on Plaintiff's behalf. On May 9, 2005, the Appeals Council issued an order accepting the report as additional evidence and making it part of the administrative record. (Tr. 7). After indicating that it considered this additional evidence, the Appeals Council concluded that it "does not provide a basis for changing the [ALJ's] decision." (Tr. 4). See Hackett v. Barnhart, 395 F.3d 1168, 1172-73 (10th Cir. 2005) (conclusory reference by Appeals Council to

-17-

consideration and rejection of new evidence submitted after ALJ's decision is sufficient at review stage).

**B.      The ALJ Properly Considered the Totality of the Medical Evidence of Record and Did Not Err By Failing to Give "Controlling Weight" to Dr. Cunningham's Opinion.**

Without any mention of the other medical evidence of record, Plaintiff argues that the ALJ was required to give controlling weight to Dr. Cunningham's opinion that she is totally disabled. Although Plaintiff's argument is based on the treating physician rule codified in 20 C.F.R. § 404.1527(d), Plaintiff fails to correctly apply that rule by its terms. Rather, Plaintiff takes an overly narrow approach and argues that since the treating physician should know best, his conclusion is binding on the ALJ. That is not the law.

Although the treating physician is always entitled to some level of deference, the ALJ is required to give controlling weight to the treating physician's opinion only when the opinion is (1) supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) not inconsistent with the other evidence in the record. See 20 C.F.R. § 404.1527(d)(2), and SSR 96-2p. When the ALJ concludes that a treating physician's opinion is not entitled to controlling weight, the ALJ must weigh that opinion using the factors provided in 20 C.F.R. § 404.1527(d)[1] and explain the weight given. See SSR 96-2p. The explanation must contain "specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the

---

[1] The factors an ALJ considers when weighing a treating physician's opinion are (1) the length of the treating relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability; (4) consistency; and (5) specialization. See 20 C.F.R. § 404.1527(d)(2).

treating source's medical opinion and the reasons for that weight." Id. The ALJ has given an adequate and supported explanation in this case.

Here, the ALJ considered Dr. Cunningham's November 13, 2004 opinion regarding Plaintiff's functional capacities. (Tr. 16-17). However, the ALJ concluded that Dr. Cunningham's opinion was not entitled to controlling weight. (Tr. 16-17). Specifically, the ALJ first stated that Dr. Cunningham's opinion was not supported by his own objective findings. (Tr. 16-17). The ALJ noted that Dr. Cunningham did not provide any medical reason for Plaintiff's complaints of back and hand problems and leg edema, and he did not confirm her complaints of headaches. (Tr. 16-17).

Additionally, the ALJ called attention to the fact that Dr. Cunningham found that Plaintiff's leg edema caused only mild, intermittent problems. (Tr. 17). In particular, while treating Plaintiff, Dr. Cunningham found that medication helped her leg edema, (Tr. 163), and that she had decreased edema in her lower extremities (Tr. 163); no edema in her extremities (Tr. 166); only trace edema in her ankles (Tr. 164, 166, 171, 173); and no edema in her ankles (Tr. 172). Moreover, as stated by the ALJ (Tr. 15), Dr. Cunningham noted that Plaintiff was doing okay (Tr. 164, 171) and that she was in no acute distress. (Tr. 174). Dr. Cunningham also found that Plaintiff was doing better (Tr. 166); feeling better (Tr. 173); and doing fine. (Tr. 174).

The ALJ reasoned that Dr. Cunningham's opinion was not entitled to controlling weight because that opinion was inconsistent with the other evidence of record. (Tr. 17). Specifically, the ALJ stated that Dr. Pianka did not find that Plaintiff suffered from edema or musculoskeletal problems. (Tr. 17). Rather, Dr. Pianka specifically found that Plaintiff had no edema in her extremities. (Tr. 227, 229, 236).

-19-

Likewise, Dr. Hein found that Plaintiff had no edema in her extremities (Tr. 180); Dr. Hebel found that Plaintiff had no edema in her extremities and no neurological, motor, or sensory deficits (Tr. 118); Dr. Doberstein found that Plaintiff had good tone, normal sensation and muscle bulk, and normal spinal range of motion with no spasms or tenderness (Tr. 141); the Newport Hospital found that Plaintiff had no edema in her extremities, back tenderness, or neurological deficits (Tr. 144, 157); Dr. Papa found that Plaintiff had no edema in her extremities (Tr. 160); and Plaintiff herself testified that medication helped her edema. (Tr. 252).

Further, the ALJ noted that there was no evidence establishing that Plaintiff's pituitary tumor worsened or recurred. (Tr. 17). Indeed, Dr. Doberstein reported that Plaintiff's residual tumor was not causing any significant compression, and he opined that she did not require surgical removal of that tumor (Tr. 141); an August 1, 2002 MRI study revealed that Plaintiff's tumor was stable (Tr. 154-155, 168); Dr. Gideon noted on September 3, 2003 that Plaintiff's symptoms had not worsened since she first applied for DIB (Tr. 225); and Plaintiff herself testified that her tumor had not moved. (Tr. 251).

Also, the ALJ reasoned that Dr. Cunningham's opinion was inconsistent with the opinions of the two DDS physicians (Tr. 16), who opined that Plaintiff had work-related limitations that were consistent with the performance of light work. (Tr. 184-187, 218-221); 20 C.F.R. § 404.1567(b). Moreover, Dr. Gieseke found that Plaintiff had the ability to concentrate adequately; no difficulty answering and understanding questions; and the ability to interact successfully with co-workers and supervisors. (Tr. 196). Further, Dr. Gordon found that Plaintiff could understand and remember basic, routine, and repetitive tasks, as well as complex and abstract tasks; complete routine and

-20-

repetitive tasks in two-hour blocks; complete team or public tasks; follow through on routine and repetitive tasks; and adapt to ordinary changes in the workplace. (Tr. 211).

In addition, Plaintiff herself reported that she performed light household chores (heavy cleaning with her husband's help), shopped, cooked, did laundry, watched television, read, drove, played games on the Internet, went out to dinner, visited with family and friends, paid bills, and cared for her personal needs. (Tr. 88-90, 92, 192, 195, 246, 248, 257, 262, 263). Finally, as noted by the ALJ, Dr. Hein concluded that Plaintiff was not disabled. (Tr. 17, 179). Thus, the ALJ properly found that Dr. Cunningham's opinion was not entitled to controlling weight since the ALJ reasonably concluded that the medical opinion was inconsistent with Dr. Cunningham's own objective findings and with the other evidence of record.[2]

## VI.   CONCLUSION

For the reasons stated above, I order that the Commissioner's Motion to Affirm (Document No. 8) be GRANTED and that the Plaintiff's Motion for Judgment (Document No. 7) be DENIED. Final Judgment shall enter in favor of the Commissioner.

LINCOLN D. ALMOND
United States Magistrate Judge
April 10, 2006

---

[2] Plaintiff further argues that the ALJ improperly reasoned that Dr. Cunningham did not provide any medical reason for her complaints of back and hand problems. (Tr. 16). Pl.'s Br. at 5. Specifically, Plaintiff claims that the ALJ's reasoning is contradicted by a March 28, 2001 bone density scan of her hip and spine that revealed osteoporosis. (Tr. 127). Pl.'s Br. at 5. However, despite that bone density scan, Dr. Cunningham never referenced osteoporosis as a reason for Plaintiff's complaints of back and hand problems, and he never found that she suffered from that impairment.